# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　Plaintiff,<br>vs.<br>ROGELIO DELGADO-BENITEZ,<br><br>　　　　　　　　　　Defendant. | CASE NO. 10cr3198 WQH<br><br>ORDER |

HAYES, Judge:

The matter before the Court is the motion to dismiss indictment under 8 U.S.C. § 1326(d) filed by the Defendant Rogelio Delgado-Benitez. ECF No. 11.

## BACKGROUND FACTS

On June 20, 2006, Defendant was served with a Notice to Appear in removal proceedings. The Notice to Appear alleged that (1) Defendant was not a citizen or national of the United States; (2) Defendant was a native and citizen of Mexico; (3) Defendant arrived in the United States near Tecate, California on or about November 22, 2005; and (4) Defendant was not then admitted or paroled after inspection by an Immigration Officer. ECF No. 13, Exhibit 11. The Notice to Appear charged that the Defendant was subject to removal under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act "in that you are an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." *Id.*

On July 26, 2006, a deportation hearing was held before the Immigration Judge. The Immigration Judge initially conducted a group hearing explaining the purpose of the hearing and the rights of each person at the hearing. The Immigration Judge explained the issues relevant to determining whether deportation should be ordered and the forms of relief from deportation including voluntary departure. The Immigration Judge explained that each person had the right to an attorney, spoke about a list of free legal services, and advised that he could grant a continuance of the hearing if anyone needed additional time to hire an attorney or find free legal representation. The Immigration Judge explained the right of appeal. ECF No. 11-2 at 9-11.

After the group hearing, the Immigration Judge addressed the Defendant individually. The Immigration Judge asked the Defendant his true name, the language he speaks and understands best, whether he was present at the earlier advisal of rights, whether he wanted his case postponed to obtain an attorney or for any other reason, whether he wanted to have his case heard and decided today, and whether he receive the Notice to Appear. Defendant responded to all questions without indicating any confusion or inability to understand. The following questions and answers then took place:

> IJ: Sir, I am going to mark and admit [the Notice to Appear] as Exhibit 1 in these proceedings. Sir, are you a citizen or national of the United States of America?
> Def: Mexico. Mexican citizen.
> IJ: Sir, listen to my question and answer it with a yes or no. Are you a citizen or national of the United States of America?
> Def: Mexican.
> IJ: Apparently Sir, you do not understand what it means to answer my question yes or no. Have a seat, Sir. If I get to your case at the end of today, we'll do it at the end of today, otherwise, I will do it around the 10th of October. Matter's trailed.

ECF No. 11-2 at 12-13. At the time of the hearing, October 10th was two and half months away.

The Immigration Judge recalled the Defendant's case later that same day for a second individualized hearing. The Immigration Judge asked the Defendant his true name, the language he speaks and understands best, whether he was present at the earlier advisal of rights, whether he wanted his case postponed to obtain and attorney or for any other reason,

and whether he wanted to have his case heard and decided today. Defendant responded to all inquiries. Defendant stated that he did not want to continue the hearing to allow time to hire an attorney or for any other reason. The Immigration Judge asked the Defendant if he had received the Notice to Appear and reviewed all of the allegations of the Notice to Appear. Defendant admitted all of the allegations of the Notice to Appear. Based upon the Defendant's response, the Immigration Judge sustained the charge of removeability. In response to the Immigration Judge's question, the Defendant requested to be removed to Mexico. ECF No. 11-2 at 14-16.

The Immigration Judge advised the Defendant that he was eligible for voluntary departure. The Immigration Judge informed the Defendant that if he wished to apply for voluntary departure, Defendant's case would be reset to a future hearing date within thirty days. The Immigration Judge specifically asked Defendant if he wanted to apply for voluntary departure. Defendant stated "No." ECF No. 11-2 at 16. The Immigration Judge asked the Defendant whether he wanted to appeal the Immigration Judge's decision sustaining the allegations in the Notice to Appear. Defendant stated "No." *Id.*

Defendant was ordered removed to Mexico and removed on the same day.

## CONTENTIONS OF THE PARTIES

Defendant contends that he was prevented by a faulty headset from information regarding the purpose of the proceedings and the relief available to him.[1] Defendant further asserts that the improper threat of the Immigration Judge to continue the case for two and a half months impermissibly pressured him into giving up his rights.

The Government contends that there is no evidence in the record to suggest that the Defendant had trouble hearing or understanding the questions of the Immigration Judge during the individualized hearing. The Government contends that all of the Defendant's answers are clear, coherent and appropriate and that any confusion that arose during the first individualized

---

[1] Defendant states in a declaration that he does not "speak or understand much English." Defendant states that he was given a wireless headset at the hearing though which the interpreter spoke and that the sound in the headset went in and out and there was an echo. ECF No. 11-2, Exhibit D.

hearing was cured during the second individualized hearing.

## APPLICABLE STANDARD

"In a criminal prosecution under § 1326, the Due Process Clause of the Fifth Amendment requires a meaningful opportunity for judicial review of the underlying deportation." *United States v. Zarate-Martinez*, 133 F.3d 1194, 1197 (9th Cir. 1998). In order to sustain a collateral attack under Section 1326(d), a defendant must, within constitutional limitations, demonstrate (1) that he exhausted all administrative remedies available to him to appeal his removal order, (2) that the underlying removal proceedings at which the order was issued improperly deprived him of the opportunity for judicial review, and (3) that the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d). An underlying removal order is fundamentally unfair if: 1) an alien's due process rights were violated by defects in the underlying proceedings, and 2) he suffered prejudice as a result of the defects. *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1047 (9th Cir. 2004). To succeed on the prejudice prong of a claim of invalid deportation, Defendant "must still show that he had 'plausible' grounds for relief." *United States v. Becerril-Lopez*, 541 F.3d 881, 886 (9th Cir. 2008).

## ANALYSIS

In *Perez-Lastor v. INS,* 208 F.3d 773, 778 (9th Cir. 2000), the Court of Appeals explained:

> It is long-settled that a competent translation is fundamental to a full and fair hearing. If an alien does not speak English, deportation proceedings must be translated into a language the alien understands. Moreover, an incorrect or incomplete translation is the functional equivalent of no translation: the alien must be able to understand the questions posed to him and to communicate his answers to the IJ.... In evaluating incompetent translation claims, this court has identified three types of evidence which tend to prove that a translation was incompetent. First, direct evidence of incorrectly translated words is persuasive evidence of an incompetent translation. Second, unresponsive answers by the witness provide circumstantial evidence of translation problems. A third indicator of an incompetent translation is the witness's expression of difficulty understanding what is said to him.

208 F.3d at 778 (citations and quotations omitted).

Review of the audio tape and the transcript in this case shows that the Immigration Judge initially conducted an advisal of rights in the group setting. At the end of the group

1  setting, the Immigration Judge asked the Defendant his true name, the language he speaks and
2  understands best, whether he was present at the earlier advisal of rights, whether he wanted his
3  case postponed to obtain and attorney or for any other reason, whether he wanted to have his
4  case heard and decided today and whether he receive the Notice to Appear.  Defendant gave
5  responsive answers to all questions and there is no indication in the record that the Defendant
6  did not understand any question.  After this series of questions and answers, the Defendant was
7  asked "Are you a citizen of the United States?" and answered "Mexico."  The Immigration
8  Judge indicated irritation with the unresponsive answer and trailed the matter.

9  Later that same day, the Immigration Judge conducted a second individualized hearing.
10 The Immigration Judge again asked the Defendant his true name, the language he speaks and
11 understands best, whether he was present at the earlier advisal of rights, whether he wanted his
12 case postponed to obtain and attorney or for any other reason, and whether he wanted to have
13 his case heard and decided today.  The Immigration Judge asked the Defendant if he had
14 received the Notice to Appear and reviewed all of the allegations in the Notice to Appear.
15 Defendant admitted all of the allegations of the Notice to Appear.   Defendant stated that he
16 did not wish to apply for voluntary departure and did not wish to appeal the order of
17 deportation. Defendant responded to all inquiries with responsive answers.  There was no
18 indication that the Defendant did not understand any aspect of the proceeding or that his
19 headset was not working properly.

20 The Court of Appeals has upheld the validity of group removal proceedings followed
21 by individualized inquiry.  *See United States v. Estrada-Torres*, 179 F.3d 776, 781 (9th Cir.
22 1999), *rev'd on other grounds United States v. Rivera-Sanchez*, 247 F.2d 905 (9th Cir. 2001).
23 In this case, there is no evidence of incorrectly translated words and no indication of an
24 incompetent translation.  The record contains one unresponsive answer which lead to
25 postponement of the individualized hearing to later the same day.  At the subsequent
26 individualized hearing, all of the inquiries from the Immigration Judge are answered with

1  responsive answers.[2]  There is no indication of confusion or indication that the headset was not
2  working properly.
3    There is no evidence of a due process violation in this case.  There is no evidence that
4  the Immigration Judge pressured the Defendant to waive any right.   Defendant was advised
5  of his right to seek voluntary departure and clearly indicated that he did not wish to apply for
6  voluntary departure. Defendant was advised of his right to appeal the order of deportation and
7  Defendant knowingly and voluntarily waived his right to appeal.
8    IT IS HEREBY ORDERED that the motion to dismiss indictment under 8 U.S.C. §
9  1326(d) filed by the Defendant Rogelio Delgado-Benitez  ECF No. 11 is denied.
10 DATED:  January 3, 2011

         *William Q. Hayes*
         **WILLIAM Q. HAYES**
         United States District Judge

---

[2] There is no evidence to suggest that the Defendant's response that he had no children when he had a child born prior to the hearing was a translation or a hearing problem.